# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DARRIN STAFFORD,

                                 :

          Petitioner,                             Case No. 1:09-cv-417

                                   :           District Judge S. Arthur Spiegel

      -vs-                                       Magistrate Judge Michael R. Merz

WARDEN, Marion Correctional
  Institution,

                                   :

          Respondent.

## REPORT AND RECOMMENDATIONS

        This habeas corpus case is before the Court for decision on the merits.  Petitioner is serving a sentence of seven years for aggravated vehicular homicide and four years each for three counts of vehicular assault.  All counts arise from the same incident and all sentences were ordered to be served consecutively for a total of nineteen years.  Petitioner pleads four grounds for relief:

> **Ground One**: Denial to modify indictment.
>
> **Supporting Facts:** Evidence clearly shows I was never suspended by an Ohio Court and Ohio Law does not recognize a "failure to appear" forfeiture specifically as a suspension prior to 1-1-04, therefore the suspension was irrelevant and felonies should not have been enhanced, increasing maximum penalty from 9 ½ years to 23 years.
>
> **Ground Two**: Denial of motion to suppress defendants statements.
>
> **Supporting Facts:** Evidence clearly shows I was never Mirandized; however, taped statements from the scene were made available to the jury at trial.
>
> **Ground Three**: Disproportionate sentence violates cruel and unusual

-1-

punishment.

**Supporting Facts:** I am a first time offender sentenced to 19 years, the record clearly shows my actions resulted because the driver passed out at some point and being paralyzed was unable to take control of the vehicle, considering this and the 22 cases I submitted on the record my sentence is far from consistent to similar offenders, the state has not answered this argument at any level.

**Ground Four**: Non-minimum, consecutive sentence violates separation of powers.

**Supporting Facts:** The Ohio Supreme Court took it upon themselves to interpret a U.S. Supreme Court decision which was done correctly, but then they legislated a new sentencing guideline preventing relief to first time offenders like myself. This clearly extends beyond the judiciary power.

(Quoted at Return of Writ, Doc. No. 8, PageID 62-63.)  Petitioner's Motion to Amend to add a claim has been denied (Doc. No. 19) and Petitioner has withdrawn his first ground for relief (Reply, Doc. No. 17, PageID 1507).  The analysis is therefore limited to Grounds Two, Three, and Four.

## Procedural History

Petitioner was indicted by the Hamilton County Grand Jury on the charges of which he stands convicted.  They arise out of a November, 2001, drive from Evansville, Indiana, to a Cincinnati Bengals football game which involved Petitioner and his friend and co-worker Frederick Shipman.  The vehicle they were driving ran a red light near the Bengals' stadium and hit at least four pedestrians, killing one and seriously injuring three others.  Petitioner was convicted at trial and appealed, resulting in a remand for resentencing and a reduction of the cumulative sentence from twenty to nineteen years. A subsequent appeal resulted in another remand for resentencing under

*State v. Foster*, 109 Ohio St. 3d 1 (2006), during which the sentence remained unchanged.  A final

attempted appeal to the Ohio Supreme Court was declined and this case followed.

## Ground Two

In his second Ground for Relief, Petitioner claims that he was convicted in part on the basis

of statements taken from him in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).

This claim was presented on direct appeal to the Hamilton County Court of Appeals and

decided by it on the merits.  *State v. Stafford,* 158 Ohio App. 3d 509 (Ohio App. 1st Dist. 2004).  The

Supreme Court has recently elaborated on the standard of review of state court decisions on claims

later raised in federal habeas corpus:

> AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996]
> provides that, when a habeas petitioner's claim has been adjudicated
> on the merits in state-court proceedings, a federal court may not grant
> relief unless the state court's adjudication of the claim "resulted in a
> decision that was contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the Supreme
> Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court
> decision is contrary to this Court's clearly established precedents if
> it applies a rule that contradicts the governing law set forth in our
> cases, or if it confronts a set of facts that is materially
> indistinguishable from a decision of this Court but reaches a different
> result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3,
> 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court
> decision involves an unreasonable application of this Court's clearly
> established precedents if the state court applies this Court's
> precedents to the facts in an objectively unreasonable manner.
> *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19,
> 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005).  Thus this Court's analysis must begin with that of the

Hamilton County Court of Appeals, since the Ohio Supreme Court declined to consider the case on the merits. The Court of Appeals dealt with the *Miranda* issue as follows:

> In his second assignment, Stafford argues that the trial court should have granted his motion to suppress his two statements to the police.
>
> The first statement, which Officer Toyeas obtained on a recording, was made approximately 45 minutes after the accident. Officer Toyeas and Officer Jerry Lathery asked Stafford a number of questions relating to the accident. Stafford admitted that he had been driving the Kia at the time of the accident. He said that he had started driving around Louisville and that he should have never let Shipman switch places with him. Once Stafford asked to speak to a lawyer, the officers stopped questioning him.
>
> Stafford made the second statement to Officer Cummins while she was with him in the police scout vehicle. Officer Cummins testified that Stafford had admitted that he had been driving the Kia.
>
> Stafford now argues that the trial court's failure to suppress these statements violated his Fifth and Sixth Amendment rights under the United States Constitution and Section 10, Article I of the Ohio Constitution. He claims that the trial court should have suppressed the statements because he never received his *Miranda* warnings.
>
> To trigger the need for *Miranda* warnings, a defendant must be subject to a custodial interrogation. Whether a custodial interrogation has occurred depends on how a reasonable person in the suspect's position would have understood the situation. "The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Determining what constitutes "custody" for *Miranda* purposes depends on the facts of each case.
>
> Roadside questioning of a motorist by police, either for a routine traffic stop or because of an accident, is typically not considered a custodial interrogation. But an interrogation conducted inside a police vehicle is usually a custodial interrogation.
>
> When Officer Toyeas recorded Stafford's statement, they were still on the road near the Kia. Stafford emphasizes the fact that it was a police-dominated atmosphere and that it was not the type of routine interrogation associated with a traffic stop or the average accident.

-4-

Whether a location is a police-dominated atmosphere is one of the factors to consider when determining whether *Miranda* warnings are necessary.

But Officer Toyeas testified that, at the time of the recording, the only officers in the vicinity were himself and Officer Lathery. While Officer Toyeas estimated that there were 20 officers at the scene, only two of them were actually questioning Stafford. One of the reasons that a routine interrogation is permitted, without *Miranda* warnings, following traffic stops and accidents is that it is conducted in public. Even though there were many police around the scene, Officer Toyeas interviewed Stafford on a public street. Even if the car and the surrounding area were cordoned off at the time, all of Officers Toyeas's and Lathery's actions occurred in public.

Officers Toyeas and Lathery were simply asking Stafford questions about the accident to determine what exactly had happened. The officers did not place Stafford in handcuffs before or during the questioning. He was not under arrest when Officer Toyeas questioned him. Nor was Stafford free to leave the scene because the police had to question him about the accident. But this was not a custodial interrogation. The trial court properly denied Stafford's motion to suppress and his motion in limine regarding his recorded statement.

Routine traffic stops can escalate to the point where they require *Miranda* warnings. While this was not a traffic stop, the same logic applies. Officer Cummins did not arrive until after Officer Toyeas had finished questioning Stafford. Further, Stafford was in the back of the police scout vehicle when he was speaking with Officer Cummins. Any conversation that Stafford had with Officer Cummins was a custodial interrogation. Stafford therefore should have been read his *Miranda* rights prior to any questioning. In fact, Officer Cummins later testified that she did read Stafford his rights.

The jury heard Officer Cummins's testimony and also heard that she had testified to the contrary in a prior hearing. The jury had the opportunity to weigh this testimony accordingly and to give it whatever weight it deemed appropriate.

And any error that may have resulted from Officer Cummins's testimony was harmless. The same basic statements were already in evidence--in Stafford's own words--because of Officer Toyeas's recording.

Stafford relies on *State v. Henderson* and *State v. Ham* for the proposition that defendants should be given their *Miranda* rights after serious auto collisions. But *Henderson* addressed *Miranda* mainly as it related to the nonverbal results of a defendant's breathalyzer and field-sobriety tests. And *Ham* held that the defendant was not free to go at any time after the accident because it was clear that the defendant had been driving under the influence of alcohol. But, again, a person subject to on-scene investigative questioning following a detention involving a traffic matter is not "in custody" for the purposes of *Miranda*. Just because Stafford had been involved in an accident did not change the fact that the officers initially had the right to detain and question him about the accident before actually arresting him.

At the time that he gave his statement to Officer Toyeas, Stafford was not under arrest, nor had there been a restraint on his freedom of movement to the degree associated with formal arrest. Officer Toyeas was therefore not required to read Stafford his *Miranda* rights at that time. And any problem resulting from Officer Cummins's testimony was, at worst, harmless error.

*Id.*. at 520-522 (footnotes omitted).

The opinion of the Hamilton County Court of Appeals is not an objectively unreasonable application of United States Supreme Court law.  The Sixth Circuit Court of Appeals has recently summarized Supreme Court law on when a person is in custody for *Miranda* purposes:

The Miranda Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. A suspect is "in custody" for purposes of receiving *Miranda* protection if there has been a "formal arrest or restraint on freedom of movement." *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California,* 511 U.S. 318, 323 (1994) (per curiam). *Miranda* warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting *Mathiason*, 429 U.S. at 495). "[T]he only relevant

> inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

*Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003).

Petitioner had not been taken into custody when he was questioned by Officer Toyeas:  he was sitting in his own wheel chair[1] at the scene of the accident and he had not been handcuffed or told that he was under arrest or taken to a police station.  The Court of Appeals cites several Ohio cases for the proposition that an interrogation while a person is an a police car is custodial.  *Stafford*, 158 Ohio App. 3d, n. 17. In  *State v. Brand*, 157 Ohio App. 3d 451 (1st Dist. 2004), the questioning occurred at a hospital, not in the police cruiser.  In *State v. Darst*, 1997 Ohio App. LEXIS 4168 (4th Dist. Sept. 2, 1997), the defendant had been handcuffed and formally arrested before being placed in the cruiser and interrogated.  *Id..* at *2.  The relevant United States Supreme Court law is *Berkemer* and this Court cannot say the Ohio court's application of *Berkemer* was objectively unreasonable.

**Ground Three**

In his third Ground for Relief, Petitioner asserts the sentence he received is disproportionate to the offenses of which he was convicted, in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment.  He notes that he is a first offender, that he tried to take over the vehicle

---

[1]The Court of Appeals opinion indicates Petitioner is a paraplegic as a result of an injury well before the incident in suit.

when the driver passed out[2], and that he submitted a number of cases to the sentencing judge to show his sentence was inconsistent with the sentences given to similar offenders.  Although Petitioner presented this claim as part of one of his assignments of error on his last appeal to the Hamilton County Court of Appeals, that Court did not separately analyze this claim and thus there is no analysis of that court to defer to.

The question before this Court, then, is whether the decision of the Hamilton County Court of Appeals is "contrary to" any clearly established precedent of the United States Supreme Court. "In order to avoid being contrary to Supreme Court precedent, a state court decision need not cite the controlling precedent or even be aware of it "so long as neither the reasoning nor the result of the state-court decision contradicts them," *Early v. Packer*, 537 U.S. 3 (2002)(per curiam). It is sufficient if the result and reasoning are consistent with Supreme Court precedent. *Slagle v. Bagley*, 457 F.3d 501 (6th Cir., 2006), citing *Early v. Packer, supra.*

As Respondent correctly points out, there is no clearly established United States Supreme Court precedent which requires proportionality between the sentence one offender receives and that imposed on other persons for the same offense.  *Pulley v. Harris,* 465 U.S. 37 (1984).  The United States Supreme Court has upheld a life without parole sentence for trafficking 650 grams of cocaine. *Harmelin v. Michigan,* 501 U.S. 957 (1991)(plurality opinion).  In its most recent opinion on this question, *Graham v. Florida,* 560 U.S. ___, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), the Court found unconstitutional any sentence of life imprisonment without possibility of parole for a person under eighteen at the time the offense was committed. Justice Kennedy wrote:

---

[2]While Petitioner claimed at trial that he was not driving the vehicle when it hit the pedestrians, the jury's verdict clearly rejected this assertion.  Petitioner could not have been found guilty except upon the conclusion he was actually driving the vehicle.

The Court's cases addressing the proportionality of sentences fall within two general classifications. The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case. The second comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty.

In the first classification the Court considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive. Under this approach, the Court has held unconstitutional a life without parole sentence for the defendant's seventh nonviolent felony, the crime of passing a worthless check. *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). In other cases, however, it has been difficult for the challenger to establish a lack of proportionality. A leading case is *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991), in which the offender was sentenced under state law to life without parole for possessing a large quantity of cocaine. A closely divided Court upheld the sentence. The controlling opinion concluded that the Eighth Amendment contains a "narrow proportionality principle," that "does not require strict proportionality between crime and sentence" but rather "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.*, at 997, 1000-1001, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (KENNEDY, J., concurring in part and concurring in judgment). Again closely divided, the Court rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's so-called three-strikes recidivist sentencing scheme. *Ewing v. California,* 538 U.S. 11, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003); see also *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The Court has also upheld a sentence of life with the possibility of parole for a defendant's third nonviolent felony, the crime of obtaining money by false pretenses, *Rummel v. Estelle,* 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), and a sentence of 40 years for possession of marijuana with intent to distribute and distribution of marijuana, *Hutto v. Davis*, 454 U.S. 370, 102 S. Ct. 703, 70 L. Ed. 2d 556 (1982) (per curiam).

The controlling opinion in *Harmelin* explained its approach for determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime. A court must begin by comparing the gravity of the offense and the severity of the sentence. 501 U.S., at 1005, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (opinion of KENNEDY , J.). "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross

> disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. Ibid. If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual. *Ibid*.

*Graham v. Florida,* 560 U.S. ___, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). Thus the Supreme Court has approved life sentences for non-violent offenders. Here the Petitioner killed one person and severely injured three others. While these were not intentionally-inflicted injuries, Petitioner is very culpable for having taken control of a lethal instrumentality without the ability to control it. Ground Three is without merit.

## Ground Four

In his fourth Ground for Relief, Petitioner asserts that the severance remedy adopted by the Ohio Supreme Court in  *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E. 2d 470 (2006), violates the separation of powers doctrine or in any event is beyond judicial power. In supporting this claim, Petitioner relies on *Youngstown Sheet & Tube Co., Inc., v. Sawyer*, 343 U.S. 579 (1952), in which the United States Supreme Court unanimously overturned President Truman's seizure of the steel mills, which he did to avert a strike. But this case involved the violation by the federal executive of the federal separation of powers doctrine.

In addition to the federal government, virtually every State has some separation of powers provisions. The doctrine of separation of powers is "implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to

-10-

the three branches of state government." *State ex rel Bray v. Russell,* 89 Ohio St. 3d 132, 134 (2000), quoting *S. Euclid v. Jemison,* 28 Ohio St. 3d 157, 158-159, 503 N.E. 2d 136 (1986); *State v. Warner,* 55 Ohio St. 3d 31, 564 N.E. 2d 18 (1990); See *State ex rel Ohio Academy of Trial Lawyers v. Sheward,* 86 Ohio St. 3d 451, 715 N.E. 2d 1062 (1999).  But it has never been held that violation of a State's separation of powers doctrine by a state supreme court somehow violates the United States Constitution.  Federal habeas courts sit only to consider and remedy violations of the United States Constitution.  28 U.S.C. §2254(a); *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); *Smith v. Phillips,* 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).  Even assuming that, as Petitioner argues, the severance remedy in *Foster* violates the Ohio Constitution, this Court cannot decide that question which is for the Ohio courts alone.  Therefore the Fourth Ground for Relief is also without merit.

## Conclusion

Ground One has been withdrawn.  Grounds Two, Three, and Four are without merit.  The Court denied leave to amend to add a fifth ground.  Therefore the Petition should be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be

denied any requested certificate of appealability and the Court should certify that any appeal is not taken in objective good faith.

July 26, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).